## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

ERIC DRAKE,            )
                  )
     Plaintiff,         )
                  )
v.                    )         Case No. 2:21-cv-02636-JTF-atc
                  )
FEDEX CORPORATION, MOLLY SMITH, )
ARTHUR WILLIAM SMITH, ALLISON   )
SMITH, TANNER SMITH, SOPHIE     )
SMITH, WILLIAM SMITH, RICHARD W.  )
SMITH, CANNON SMITH, DIANE SMITH, )
BARBARA GOLDEN LYNN, MICHAEL   )
PAIGE LYNN, SAM ALLEN LINDSAY,   )
DAVID C. GODBEY, JAMES EDGAR    )
KINCAIDE, JANE ELLEN JACKSON    )
BOYLE, REED O'CONNOR, KAREN     )
GREN SCHOLER, MATTHEW J.       )
KACSMARYK, MARK TIMOTHY      )
PITTMAN, JAMES WESLEY HENDRIX,  )
BRANTLEY STARR, ADA BROWN, A.   )
JOE FISH, SIDNEY A. FITZWATER, SAM )
R. CUMMINGS, JOHN H. MCBRYDE,   )
JON PHIPPS MCCALLA, TERRY R.    )
MEANS, IRMA CARRILLO RAMIREZ,  )
JEFFREY L. CURETON, RENEE HARRIS )
TOLIVER, DAVID L. HORAN, HAL R.   )
RAY, JR., LEE ANN RENO, MARK     )
NORRIS, REBECCA RUTHERFORD,   )
JOHN R. PARKER, TU PHAM, JAMES   )
DAVID FOLSOM, CAROLINE CRAVEN, )
THOMAS L. PARKER, ROBERT      )
SCHROEDER III, FGPS, FEDEX      )
COPORATE SERVICES, INC., WARREN  )
LLOYD VAVRA, MARICELA MOORE,   )
SCOT MACDONALD GRAYDON, and   )
TONYA PARKER,            )
                  )
     Defendants.       )

---

**REPORT AND RECOMMENDATION AND ORDER ON OUTSTANDING MOTIONS**

---

Before the Court by order of reference[1] are several motions.  On November 1, 2021, Defendants FedEx Corporation and Frederick W. Smith filed a Motion to Dismiss.  (ECF No. 11.)  On November 22, 2021, *pro se* Plaintiff Eric Drake filed his response to the motion (ECF No. 13), as well as a "first amended original petition" (the "Amended Complaint") (ECF No. 16).  Drake filed three additional motions that day: a Motion to Extend Time to Serve Defendants (ECF No. 12), a Motion for Leave to Offer Evidence and Proof (ECF No. 14), and a Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive Motion and Request Evidentiary Hearing (ECF No. 15).  On December 3, 2021, Defendants FedEx Corporation, FedEx Corporate Services, Inc., and Frederick W. Smith (the "FedEx Defendants") filed their response in opposition to those motions.  (ECF No. 21.)  The same day, the FedEx Defendants also filed a Motion to Dismiss Plaintiff's Amended Original Petition (ECF No. 19)[2] and a Motion to Strike Amended Complaint (ECF No. 20).  On December 13, 2021, Drake filed a Motion for Rule 11 Sanctions.  (ECF No. 22.)[3]  On December 21, 2021, the FedEx Defendants filed their response in opposition to Drake's motion for sanctions (ECF No. 30) and a

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2] As the FedEx Defendants note in their second motion to dismiss, "[t]he 'Amended Original Petition' is essentially the same as Mr. Drake's first petition, but it removes Mr. Smith's family members as defendants and adds another FedEx entity – FedEx Corporate Services, Inc. as a defendant."  (ECF No. 19-1, at 1.)  As noted *infra*, Drake's Amended Complaint also removed several judges as parties.

[3] The same day, Drake filed a Motion for Extension of Time to Respond to the Motion to Dismiss Plaintiff's Amended Original Petition (ECF No. 23), which the Court granted on December 30, 2021 (ECF No. 32).

Supplemental Motion to Strike (ECF No. 31).  On January 3, 2022, Drake responded to the

Motion to Dismiss Plaintiff's Amended Original Petition (ECF No. 34)[4] and the Supplemental

Motion to Strike (ECF No. 35) and filed an Expedited Motion for Plaintiff's Additional Motions

and Responses to Defendant FedEx Motions be Submitted to the Court for Review (ECF No.

38).  The same day, Drake also filed, without leave of Court, a reply in further support of his

Motion to Extend Time to Serve Defendants, Motion for Leave to Offer Evidence and Proof, and

Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive

Motion and Request Evidentiary Hearing (ECF No. 36), as well as a reply in further support of

his Motion for Rule 11 Sanctions (ECF No. 37).[5]  On January 11, 2022, the FedEx Defendants

filed their reply to Drake's response to the Motion to Dismiss Plaintiff's Amended Original

Petition.  (ECF No. 39.)[6]

---

[4] Under LR 12.1, "[m]emoranda in opposition to motions to dismiss shall not exceed 20 pages without prior Court approval."  LR 7.1(d) provides that "[p]age limitations imposed by these Local Rules do not include captions, signature lines, and certificates of service and/or consultation."  Drake's memorandum is roughly twenty-six pages.  He did not seek leave to exceed the twenty-page limit.

[5] Under Local Rule 7.2(c), "[e]xcept as provided by LR 12.1(c) and LR 56.1(c), reply memoranda may be filed only upon court order granting a motion for leave to reply.  Such motion for leave must be filed within 7 days of service of the response."  The Local Rule contains some exceptions, none of which are inapplicable here.  Drake neither sought, nor was granted, leave to file the replies and filed them beyond the time period in which he was permitted to seek leave.  The Court thus does not consider those filings herein.

[6] On December 13, 2021, Drake also filed a document styled "Plaintiffs' Request Court's Opinion of Whether the Actions of the FedEx Driver Repetitive Use of the 'N' Word Amounts to Racial Discrimination."  (ECF No. 24.)  The request asks the Court to answer the following question: "Under the circumstance described herein would the word, Nigger be considered as Race Discrimination regardless of the race, creed, or color of the person who speaks this word directly to an African American?"  (*Id.* at 6.)  That request is not filed pursuant to any applicable rule of procedure and is improper.  In addition, by asking a generalized question whose answer would be broadly applicable and not limited to this case, Drake seeks what amounts to an advisory opinion, which the Court cannot provide. *See, e.g.*, *Shumway v. Neil Hosp., Inc.*, 570 F. Supp. 3d 585, 589 (W.D. Tenn. 2021), *appeal dismissed*, No. 21-6079, 2022 WL 1562073 (6th Cir. Mar. 29, 2022) ("Federal courts may only pass judgement upon conflicts where each party has a concrete stake in the outcome.  Thus, courts are prohibited from issuing advisory opinions

This Order is divided into two sections. As explained below, and consistent with the authority granted magistrate judges under 28 U.S.C. § 636 and Administrative Order No. 2013-05, the first section offers a Report and Recommendation, and the second section rules on outstanding motions.

## REPORT AND RECOMMENDATION

For the reasons explained below, the Court recommends that the FedEx Defendants' Motion to Dismiss Plaintiff's Amended Original Petition (ECF No. 19) be GRANTED IN PART AND DENIED IN PART. The Court also recommends that the Motion to Strike Amended Complaint (ECF No. 20) and the Supplemental Motion to Strike (ECF No. 31) be GRANTED IN PART AND DENIED IN PART and the Motion for Sanctions (ECF No. 22) be DENIED. Finally, the Court recommends that the claims against the judicial defendants in this matter be DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(1).

## I.    Proposed Findings of Fact

Plaintiff's Amended Complaint spans 242 paragraphs and ninety-six pages and includes twenty-two causes of action. (ECF No. 16.) The facts that form the basis for the complaint span from page twelve to twenty-six, and, for the purposes of this Order, are accepted as true and construed in a light most favorable to Drake. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). At the root of Drake's claims is an interaction he had with Cole Brewster, who Drake asserts was delivering packages for FedEx on December 16, 2020, in Dallas, Texas. (ECF No. 16, at 12.) Drake had come to a UPS Store to retrieve a package that was to be delivered

---

on hypothetical matters. Allowing courts to pass judgement on non-controversies would turn the judiciary into a quasi-legislative branch."). The relief requested in ECF No. 24 is DENIED.

there by FedEx. (*Id.*) Drake tried, and initially failed, to get Brewster's attention to see if Brewster had Drake's package in his truck. (*Id.*) Eventually, Brewster responded to Drake outside of the store, calling him "nigger" and "old crusty nigger" and telling him "I'm going to kick your ass." (*Id.* at 13.) After Drake collected the license plate information from Brewster's delivery truck, Brewster emerged from a nearby store and hurled additional insults at Drake, calling him "crusty nigger" and "crusty ass nigger" multiple times. (*Id.* at 13–14.) According to Drake, Brewster also assumed a "fighting stance and appeared to be ready to cause the Plaintiff physical harm." (*Id.* at 14.)

Drake described this incident to an employee at a FedEx location in Mesquite, Texas, and on December 16, 2020, Drake sent "an email to the CEO of FedEx Corporation, Frederick Smith, explaining the racial attack on him by a FedEx driver, Cole." (*Id.* at 15.) Smith did not respond to the email. (*Id.* at 16.) As a result of his interaction with Brewster, Drake asserts that he "has been so upset and frightened to go to his own mailbox that he has had a person in the car with him, since this unfortunate incident has occurred out of fear of being possibly assaulted by the FedEx driver." (*Id.* at 17.) He asserts that he "suffers mental anguish as a result of Cole Brewster's conduct and practices." (*Id.* at 18.) Drake asserts that Smith has "refus[ed] to issue a letter of apology" to him and, "[a]t the very least, Mr. Brewster's actions against Drake was malicious harassment and disturbing the peace." (*Id.* at 19.) Drake asserts that he "had a contract with FedEx to deliver a package to him" and that he "paid FedEx to deliver his package and the services thereof, but FedEx violated that contract." (*Id.*) He does not allege that FedEx failed to deliver his package.

## II.    Proposed Conclusions of Law

A.    <u>Recommendation to Grant in Part and Deny in Part Motion to Dismiss</u>

The FedEx Defendants assert that Drake's claims against them should be dismissed both under Federal Rule of Civil Procedure 12(b)(1), as the Court lacks subject-matter jurisdiction over the claims, and under Rule 12(b)(6), as they fail to state a claim for which relief could be granted.

### 1.    Standards of Review Under Rules 12(b)(1) and (6)

Federal Rule of Civil Procedure 12(b)(1) provides the means for dismissing cases in the absence of a federal court's limited jurisdiction.  "Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "Subject matter jurisdiction is a threshold issue which a court must determine before reaching other issues." *Brent v. Dep't of Veterans Affs. Debt Mgmt. Ctr.*, No. 19-cv-2446-TLP-dkv, 2020 WL 1889008, at *2 (W.D. Tenn. Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 917288 (W.D. Tenn. Feb. 26, 2020) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)).  "[A] district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated,

unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "may involve a facial attack or a factual attack." *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005)). A facial attack "questions merely the sufficiency of the pleading." *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir. 2009) (citing *Gentek Bldg. Prods. v. Sherwin-Williams Claims*, 491 F.3d 320, 330 (6th Cir. 2007)). "A factual attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Rhea Drugstore, Inc. v. Smith & Nephew, Inc.*, No. 2:15-cv-02060-JPM-tmp, 2015 WL 3649061, at *2 (W.D. Tenn. June 10, 2015) (quoting *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "Where a Rule 12(b)(1) motion challenges the factual basis for jurisdiction, 'a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Id.* (quoting *Williams v. Hooah Sec. Servs.*, LLC, 729 F. Supp. 2d 1011, 1012 (W.D. Tenn. 2010)).

To determine whether Plaintiff's complaint states a claim on which relief may be granted under Rule 12(b)(6), the Court applies the standards articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an

entitlement to relief. *HDC*, 675 F.3d at 611. Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Capital Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

2.    *Whether the Court Has Jurisdiction over Drake's Claims*

"Federal courts are courts of limited jurisdiction"; "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  Drake asserts that jurisdiction is proper before this Court because his Amended Complaint establishes diversity jurisdiction under 28 U.S.C. § 1332[7] and poses federal questions under 28 U.S.C. § 1331.[8]  (ECF No. 16, at 9–11.)

i.    Diversity Jurisdiction Under § 1332

The FedEx Defendants do not contest diversity among the parties but instead assert that, on their face, Drake's claims do not satisfy the $75,000 amount in controversy requirement.  Drake has pled damages "in excess of one billion dollars."  (ECF No. 16, at 9.)  His monetary demands include $5.5 billion dollars in damages for FedEx's violations of § 1981 (*id.* at 37), $200 million from FedEx and Frederick W. Smith for intentional emotional distress (*id.* at 89), $40 million in punitive damages (*id.*), special damages in the amount of $1 billion (*id.* at 90), and various costs, fees, and other damages of unspecified amounts (*id.* at 89).  He asserts, without citation, that, based on his research, "cases of race discrimination have settled [for] between 6 million and 200 million dollars" and "none of those cases had evidence as compelling as in this case."  (ECF No. 34, at 5–6.)  He further asserts that "[t]he conduct of Mr. Brewster, Defendant

---

[7] "Federal district courts have original jurisdiction of all civil actions between citizens of different states 'where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'"  *Swift v. Old Dominion Freight Lines, Inc.*, – F. Supp. 3d –, 2022 WL 1810721, at *2 (W.D. Tenn. Jan. 31, 2022) (quoting 28 U.S.C. § 1332(a)(1)).

[8] Under § 1331, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Smith, and FedEx's lead counsel are deplorable.  It is facially apparent that the Plaintiffs' damages exceed the jurisdictional amount." (*Id.* at 7.)

The FedEx Defendants assert that Drake received the package that prompted his interaction with Brewster, resulting in no monetary loss.  (ECF No. 19-1, at 6.)  They therefore assert that "any monetary relief is limited to some sort of emotion distress arising out of this single brief encounter in a parking lot with an employee of a service provider for FedEx Ground." (*Id.*)  Ultimately, the FedEx Defendants assert that Drake's "claimed multibillion dollar damages are based on hearsay and speculation, are frivolous and completely out of bounds of any amount that could be awarded based on the allegations in the Amended Petition and should not be given credence by the Court." (*Id.*)

"The party invoking federal court jurisdiction . . . has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Evanston Ins. Co. v. Hous. Auth. of Somerset*, 658 F. App'x 799, 802 (6th Cir. 2016) (quoting *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010)).  In a federal diversity action, the amount alleged in the complaint will suffice to establish the jurisdictional amount unless it appears to a legal certainty that the plaintiff in good faith cannot claim the jurisdictional amount.  *Klepper v. First Am. Bank*, 916 F.2d 337, 340 (6th Cir. 1990) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)); *Truck Centers, Inc. v. P&D Used Cars, Inc.*, No. 12-1098, 2012 WL 12899054, at *1 (W.D. Tenn. Nov. 16, 2012) ("Diversity jurisdiction is defeated when it appears to a legal certainty that the claim is really for less than the jurisdictional amount.") (quoting *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011)).  "Where a party alleges excessive damages beyond any reasonable expectation of recovery, jurisdiction does not attach." *Jennings v. Ford Motor Co.*, 56 F.3d 64,

1995 WL 299049, at *1 (6th Cir. 1995) (unpublished table opinion) (citing *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976)).

Courts have routinely found damages claims well below Drake's to be excessive and demonstrate a lack of good faith, thus failing to meet § 1332's amount-in-controversy requirement. In *Jennings*, the court determined that a Ford employee's prayer for ten million dollars in damages for an alleged verbal and physical assault by his supervisor was "so excessive in comparison with the facts alleged in support of the claim as to evidence a lack of good faith," such that the amount-in-controversy requirement was not satisfied. 1995 WL 299049, at *1. Similarly, the plaintiff in *Amison v. Dominos Pizza Inc.* sought $500 million in punitive damages based on claims that the defendant and its employees libeled him by posting his bank card information online. No. 1:20-CV-119, 2020 WL 9762464, at *1 (W.D. Mich. Apr. 7, 2020), *report and recommendation adopted*, 2020 WL 2085104 (W.D. Mich. Apr. 30, 2020). The court acknowledged that alleged punitive damages should be considered in determining whether the amount in controversy is satisfied, "unless it is apparent to a legal certainty that such cannot be recovered." *Id.* (quoting *Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 F. App'x 463, 471 (6th Cir. 2019)). Nevertheless, and consistent with *Jennings*, the court concluded that the damages sought were "so excessive in comparison with the facts alleged" that they demonstrated a lack of good faith, and the court dismissed the complaint for lack of subject matter jurisdiction. *Id.* at *2.[9]

---

[9] On March 27, 2020, the Northern District of Ohio issued eight decisions based on the same facts in which it collected cases supporting the conclusion that, even construing a *pro se* plaintiff's claims liberally, the claims of $75 million damages for a data breach was "entirely speculative" and therefore that it "appears to a legal certainty that [the plaintiffs] cannot in good faith claim the jurisdictional amount necessary for this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1332." *Davis v. Equifax, Inc.*, No. 5:20-CV-361, 2020 WL 1493857, at *3 (N.D. Ohio Mar. 27, 2020); *Long v. Equifax, Inc.*, No. 5:20-CV-362, 2020 WL 1493858, at *3 (N.D. Ohio Mar. 27, 2020); *Turman v. Equifax, Inc.*, No. 5:20-CV-382, 2020 WL 1493859, at *3 (N.D. Ohio Mar. 27, 2020); *Allen v. Equifax, Inc.*, No. 5:20-CV-383, 2020 WL 1493860, at

Consistent with these cases, Drake's claim that he has suffered multiple billions of dollars in damages at the FedEx Defendants' hands is beyond any reasonable expectation of recovery and cannot be said to have been made in good faith. Drake alleges that, while interacting with Brewster about receipt of his package, Brewster hurled racial epithets and insults at him and that Brewster assumed a "fighting stance" and appeared ready to harm him. As a result, he alleges he is too frightened to go to his mailbox alone and has suffered mental anguish. He does not allege any physical harm and does not allege that his package was undelivered. The damages Drake seeks are so excessive in comparison with those facts, even if accepted as true, that they evidence a lack of good faith. The damages prayed for are unattached to any articulated harms and untethered to reality. As such, Drake has not established jurisdiction under § 1332.

### ii.    Federal Question Jurisdiction Under § 1331

Drake asserts federal question jurisdiction based on his claims that the FedEx Defendants violated the United States Constitution, 42 U.S.C. § 1981, and Title II of the Civil Rights Act. (ECF No. 19-1, at 7.) The FedEx Defendants assert that, "[a]lthough the well-pleaded-Complaint rule focuses on what the plaintiff alleges, it allows the Court to look past the words of the Complaint to determine whether the allegations ultimately involve a federal question." (*Id.* at 7 (citing *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008).) They conclude that "Mr. Drake's claims under the federal laws cited in his Amended Petition all lack an arguable basis in law and are not sufficient to invoke the Court's federal question jurisdiction." (*Id.* at 9.)

---

*3 (N.D. Ohio Mar. 27, 2020) *Jackson v. Equifax, Inc.*, No. 5:20-CV-401, 2020 WL 1493862, at *3 (N.D. Ohio Mar. 27, 2020); *Laston v. Equifax, Inc.*, No. 5:20-CV-402, 2020 WL 1493863, at *3 (N.D. Ohio Mar. 27, 2020); *Wilson v. Equifax, Inc.*, No. 5:20-CV-404, 2020 WL 1493865, at *3 (N.D. Ohio Mar. 27, 2020 *Wilson v. Equifax, Inc.*, No. 5:20-CV-405, 2020 WL 1493866, at *4 (N.D. Ohio Mar. 27, 2020).

However, whether Drake's claims lack an arguable basis in law is a question appropriately answered under Federal Rule of Civil Procedure 12(b)(6), as the Court does below, and not in the context of a request for jurisdictional dismissal under Rule 12(b)(1).  The appropriate inquiry in assessing this Court's jurisdiction under Rule 12(b)(1) is whether "the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous,' or in other words, 'has no plausible foundation.'"  *Halttunen v. City of Livonia*, 664 F. App'x 510, 513 (6th Cir. 2016) (quoting *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 44 (6th Cir. 2006)).  In *Bell v. Hood*, the Supreme Court explained:

> Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy.  If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

327 U.S. 678, 682 (1946) (citing *Swafford v. Templeton*, 185 U.S. 487, 493, 494 (1902); *Binderup v. Pathe Exchange*, 263 U.S. 291, 305-308 (1923)); *see also Park Hills Music Club, Inc. v. Bd. of Ed. of City of Fairborn, Greene Cnty., State of Ohio*, 512 F. Supp. 1040, 1044 n.3 (S.D. Ohio 1981) ("[I]f the 'federal question' upon which jurisdiction is alleged is frivolous, fabricated, or insubstantial, then dismissal follows under Rule 12(b)(1) for lack of jurisdiction.  But if the 'federal question' presented by the complaint is substantial (although it can be readily resolved against the plaintiff at the outset), then dismissal follows under Rule 12(b)(6) for failure to state a claim.") (citing *Bell*, 327 U.S. at 682).  The Sixth Circuit Court of Appeals reiterated this distinction last year in *Benalcazar v. Genoa Twp., Ohio*:

> Subject-matter jurisdiction over a dispute is one thing; the merits of the underlying dispute are another.  Rarely do the twain meet.  What matters here is a threshold question, one distinct from the plausibility inquiry of Civil Rule

> 12(b)(6): Namely, do the federal questions raised by this complaint legitimately create federal court jurisdiction because they are not so frivolous as to be a contrived effort to create such jurisdiction?

1 F.4th 421 (6th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998)).

Here, the claims Drake has posed are neither immaterial, made solely for the purpose of obtaining jurisdiction, wholly insubstantial, nor frivolous.  As the Court's analysis in the next section demonstrates, though not all of Drake's federal claims reach the level of plausibility under Rule 12(b)(6), none are so frivolous or fabricated as to be a contrived effort to create jurisdiction.  Jurisdiction is thus properly before this Court under § 1331, and denial of the request for dismissal for lack of subject matter jurisdiction is recommended.[10]

### 3.    Whether Drake States a Claim Under Rule 12(b)(6)

The FedEx Defendants assert that, '[f]or the same reasons the facts alleged in the Amended Petition are insufficient to support federal question jurisdiction, they are equally insufficient to state a claim under the cited federal laws."  (ECF No. 19-1, at 10.)  Although the facts do, as explained above, support federal question jurisdiction, not all of Drake's claims sufficiently state a claim under Rule 12(b)(6).

### i.    Whether Drake States a Claim Under § 1981

In relevant part, 42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts."  To "'make and enforce contracts' includes the making, performance, modification,

---

[10] In his response to the motion to dismiss, Drake requests that, "prior to the Court ruling on this matter, the Plaintiff respectfully request that the Court allow limited discovery, in particularly limited depositions and written discovery would support, demonstrate, and reinforce the fact that this Court has jurisdiction over the Defendants."  (ECF No. 34, at 26.)  Given the foregoing, limited discovery is unnecessary.

and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions

of the contractual relationship." § 1981(b); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S.

470, 474–75 (2006). "To state a claim under 42 U.S.C. § 1981, a plaintiff must initially identify

an impaired contractual relationship, under which the plaintiff has rights." *Hastings v. Shelby*

*Cnty. Gov't*, No. 17-2687-SHL-cgc, 2018 WL 7348026, at *3 (W.D. Tenn. Oct. 23, 2018),

*report and recommendation adopted as modified*, 2019 WL 313203 (W.D. Tenn. Jan. 24, 2019)

(citing *Domino's*, 546 U.S. at 476) (internal quotations and citations omitted). The Sixth Circuit

Court of Appeals has identified the prima facie elements of a § 1981 commercial establishment

claim:

> (1) plaintiff is a member of a protected class;
> (2) plaintiff sought to make or enforce a contract for services ordinarily provided
> by the defendant; and
> (3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of
> the contractual relationship in that
> > (a) plaintiff was deprived of services while similarly situated persons
> > outside the protected class were not and/or
> > (b) plaintiff received services in a markedly hostile manner and in a
> > manner which a reasonable person would find objectively discriminatory.

*Harris v. Wells Fargo Bank, N.A.*, No. 18-2400-JPM-dkv, 2019 WL 3080764, at *8 (W.D. Tenn.

Mar. 18, 2019), *report and recommendation adopted in part*, 2019 WL 2319529 (W.D. Tenn.

May 31, 2019*), aff'd sub nom. Hogrobrooks v. Wells Fargo Bank, N.A.*, No. 19-5609, 2020 WL

7231501 (6th Cir. June 9, 2020) (citing *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872

(6th Cir.), *opinion supplemented on denial of reh'g*, 266 F.3d 407 (6th Cir. 2001)).

In asserting that FedEx breached its contract with him, Drake claims that "Defendants

FedEx and Smith's breach/repudiation of the Contract is the driving force by FedEx's

representative, Cole Brewster's racism and Smith's stance, which was the cause of actual and

proximate cause of damages to Eric Drake in an amount within this Court's jurisdictional

limitations. Plaintiff is entitled to and herein sues for his reasonable damages as proven at trial."
(ECF No. 16, at 46.) The FedEx Defendants counter that, assuming "arguendo that there was a
'contract' between Mr. Drake and FedEx, there is no allegation that FedEx failed to honor the
terms of the contract, i.e., that Mr. Drake did not receive the package in question, and that the
reason was due to his race." (ECF No. 19-1, at 8.) The FedEx Defendants acknowledge that
"Brewster's language was clearly inappropriate" but assert that "this single, isolated exchange in
a parking lot cannot form the basis of a claim against these Defendants under Section 1981."
(*Id.*)

Here, Drake has asserted that he is African-American and therefore a member of a
protected class. (ECF No. 16, at 1.) He has also asserted that he "had a contract with FedEx to
deliver a package to him." (*Id.* at 19.) Though he broadly asserts that Brewster refused to
comply with the contract, in no small part due to the insults he hurled at Drake, the FedEx
Defendants are correct that Drake never claims that FedEx did not fulfill its contractual
obligation to deliver his package. In fact, Drake asserts that "[w]hether [he] ultimately received
his package is not the issue," in an implicit admission that he eventually did receive his package.
(*Id.* at 42.)

However, under the Sixth Circuit test for § 1981 claims in the commercial context,
whether Drake ultimately received his package is not the end of the inquiry. Instead, Drake may
adequately state a claim if he sufficiently alleges that he was "denied the right to enter into or
enjoy the benefits or privileges of the contractual relationship in that . . . [he] received services in
a markedly hostile manner and in a manner which a reasonable person would find objectively
discriminatory." *Harris*, 2019 WL 3080764, at *8. The cases relied on by the FedEx
Defendants are from outside the Sixth Circuit and do not include this element. *See, e.g.*, *Drake*

*v. Costume Armour, Inc.*, 2017 WL 4221143 (S.D. Tex. Sept. 6, 2017); *Drake v. Mitch Rosen*

*Extraordinary Gunleather, LLC*, No. 16-CV-527-JL, 2017 WL 1076396 (D.N.H. Jan. 17, 2017),

*report and recommendation adopted*, No. 16-CV-527-JL, 2017 WL 1066585 (D.N.H. Mar. 21,

2017).  "In determining whether a defendant's actions rise to the level of being markedly hostile,

courts consider whether the conduct is: '(1) so profoundly contrary to the manifest financial

interests of the merchant and/or her employees; (2) so far outside of widely-accepted business

norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of

discrimination.'"  *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009) (quoting

*Christian*, 252 F.3d at 871).  "[C]ourts examining cases brought under the 'markedly hostile

manner' theory have typically required 'racially charged conduct' to establish a prima facie case

of discrimination."  *Wood v. U.S. Bank Nat'l Ass'n*, No. 5:17CV2234, 2019 WL 1255229, at *3

(N.D. Ohio Mar. 19, 2019).

      Courts in the Sixth Circuit have evaluated conduct comparable to what Drake alleges and

determined that it qualified as markedly hostile, including in *Leach v. Heyman*, 233 F. Supp. 2d

906 (N.D. Ohio 2002), which involved circumstances closely mirroring those at issue here.  In

*Leach*, the court denied summary judgment to a convenience store whose employee called an

African-American customer "nigger" and threatened to "kick his ass."  *Id.* at 908.  The court

explained that the utterance of the racial epithet was not merely the sort of "rude, indifferent or

unfriendly circumstances" that were not actionable under § 1981 but rather was a "name that any

African-American would find deeply offensive" and constituted "clear and direct proof of bias."

*Id.* at 911; *see also Biddle v. Park Place Hotel, LLC*, No. 2:08-cv-2235, 2008 WL 11417814, at

*4 (W.D. Tenn. July 25, 2008) (finding that a hotel manager's behavior toward an African-

American guest, including denying him access to amenities and accommodations and calling the

police to have him removed from the hotel without just cause, were contrary to the manifest financial interests of the hotel, were far outside business norms, and therefore adequately demonstrated markedly hostile actions); *Unroe v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, No. 1:04-CV-00181, 2006 WL 22081, at *16 (S.D. Ohio Jan. 4, 2006) (denying summary judgment on an equal benefits claim under § 1981 where the defendant's employee allegedly said of African-American students, "I don't want them kind around here").

Drake has alleged that Brewster hurled racial epithets at him during two interactions outside the UPS Store. (ECF No. 16, at 13–14.) As in *Leach*, those interactions were not merely "rude, indifferent or unfriendly" and were instead, if true, deeply offensive and indicative of bias. *See* 233 F. Supp. 2d at 911. Drake has sufficiently pled that he received the services from FedEx in a markedly hostile manner, and the Court recommends that the FedEx Defendants' motion to dismiss Drake's § 1981 claim be denied.

       ii.    Whether Drake States a Claim Under Title II of the Civil Rights Act

Drake asserts that the FedEx Defendants violated his civil rights under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, claiming that Brewster's reference to him "as a Crusty Nigger when the Plaintiff simply asked about his package that FedEx was delivering was a discriminative act." (ECF No. 16, at 38.) The FedEx Defendants counter that "FedEx and Mr. Smith have no control over Mr. Drake's access and enjoyment of a UPS Store in Dallas, Texas, or the parking lot of that store." (ECF No. 19-1, at 9.) Furthermore, they argue that Drake "fails to allege how these Defendants, not Brewster, interfered with such enjoyment, beyond Mr. Smith not personally responding to an email." (*Id.*) In their reply, the FedEx Defendants also assert that "[n]one of the locations where the altercation with Mr. Brewster took place are 'public accommodations' within the meaning of Title II," and, in any event, "the Court cannot enjoin

FedEx and Mr. Smith from discrimination in a public parking lot or business establishment in Texas over which they have no ownership or control." (ECF No. 39, at 2.)[11]

Title II of the Civil Rights Act of 1964 provides:

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion or national origin.

42 U.S.C. § 2000a(a). The Act outlines what sort of establishments qualify as places of public accommodation, including hotels, restaurants, concert halls, and sports arenas. § 2000a(b)(1)–(4).

Drake asserts that "FedEx is considered as a place of accommodation." (ECF No. 34, at 22.) However, "FedEx" generally does not qualify as a place of public accommodation, and whether FedEx facilities are places of public accommodation is not at issue, as Drake has not pled that any of the actions he complains of took place at a FedEx facility.[12] Moreover, as the FedEx Defendants note, parking lots are not places of public accommodation under § 2000a. *See Davis v. City of Dearborn*, No. 2:09-CV-14892, 2010 WL 5282015, at *7 (E.D. Mich. Dec. 17,

---

[11] The FedEx Defendants also argue that Title II of the Civil Rights Act does not provide a private remedy of damages. (ECF No. 19-1, at 9.) Indeed, injunctive and declaratory relief are the only remedies available under § 2000a. *See* 42 U.S.C. § 2000a-3(a); *Watson v. Fraternal Ord. of Eagles*, 915 F.2d 235, 241 (6th Cir. 1990). However, Drake makes clear that he is seeking "no monetary damages whatsoever, nor punitive damages" (ECF No. 16, at 38) and instead seeks an injunctive order "declaring that the policies and procedures of Defendant FedEx and Defendant Frederick W. Smith are of unlawful race discrimination as pled herein *ab initio* and enjoining and restraining Defendants from the continual implementation, enforcement, dissemination of discriminatory conduct towards the Plaintiff and other ethnic monitories [sic] as set forth herein" (*id.* at 44).

[12] Drake cites to *Longen v. Fed. Express Corp.*, 113 F. Supp. 2d 1367, 1377 (D. Minn. 2000), in support of his claim that FedEx qualifies as a public accommodation. (ECF No. 34, at 19.) Not only is that decision not binding on this Court, but it also was interpreting the Minnesota Human Rights Act. Unlike Title II of the Civil Rights Act, the Minnesota Human Rights Act includes "business" in its definition of "place of public accommodation." *See* Minn. Stat. Ann. § 363A.03 subd. 34.

2010) ("A parking lot is not a place of public accommodation within the meaning of Title II."). To the extent Drake's claim under Title II hinges on his access to the parking lot, to "FedEx," or to FedEx facilities, he has failed to state a claim.

Drake also asserts that UPS Stores are places of public accommodation and argues that Brewster's actions denied him access to the UPS Store in Dallas during and after their encounter. (ECF No. 34, at 22.) Drake's allegations in support of this theory are not entirely clear. For instance, he argues that Brewster's words constitute "fighting words" and are unprotected under the First Amendment. (*Id.* at 19–20.) He also asserts that the video he has moved to be included in the record captures this encounter and that depositions would allow him to further demonstrate the actions that Brewster took. (*Id.* at 20–21.)

Even assuming the UPS Store is a place of public accommodation, and even if Brewster's actions can be imputed to FedEx, his threat to "'kick the Plaintiff's ass' as the Plaintiff walked out of the UPS Store" or his "refus[al] to provide service to the Plaintiff while in the UPS Store" (*id.* at 20) do not constitute a denial of Drake's access to the UPS Store because Drake does not allege that either Brewster or FedEx owns or controls the UPS Store. *See Cha v. Hooters of Am., LLC*, No. 12-CV-4523 DLI JMA, 2013 WL 5532745, at *5 (E.D.N.Y. Sept. 30, 2013) (dismissing a Title II claim because the plaintiff insufficiently pled that the defendant had "day-to-day control" over the employment of one of its franchisees); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 9 F. Supp. 2d 460, 485 (D.N.J. 1998) (finding that, in the context of an Americans with Disabilities Act claim, "it would be odd to saddle someone with liability for a certain discriminatory condition at a public accommodation when it is not that person who manages, controls, or regulates the public accommodation for the purpose of that particular condition. If the contrary were the rule, then it is not clear what relief could be obtained from

20

someone who has no power to effect a remedy for the violation"). The Amended Complaint does not plausibly allege that the FedEx Defendants deprived Drake of access to a public accommodation, and the Court recommends dismissal of Drake's Claim under Title II.

iii.    Whether Drake States a Claim for Declaratory Relief

The FedEx Defendants argue for dismissal because the Declaratory Judgment Act cannot independently bestow jurisdiction upon the Court, based on their position that the Court otherwise lacks jurisdiction over Drake's claims. (ECF No. 19-1, at 9.) As described above, however, the Court has concluded that Drake has established this Court's jurisdiction over his claims, insofar as they pose federal questions. The FedEx Defendants' Motion does not otherwise provide a basis for dismissing Drake's claim for declaratory relief, and it is recommended that the request be denied.

iv.    Whether Drake States a Claim Under State Law

After asserting that Drake's claims all lack an arguable basis in law and are insufficient to invoke the Court's federal question jurisdiction, the FedEx Defendants assert that his "remaining claims arise, if at all, under state law" and, "[a]s he did not establish diversity of citizenship jurisdiction, this matter cannot proceed solely on the state law claims in this Court, if any could survive a motion to dismiss." (ECF No. 19-1, at 9.) The FedEx Defendants do not substantively address Drake's state law claims and, given that the Court is recommending denying the FedEx Defendant's Motion to Dismiss in part, it does not recommend dismissal of the state law claims.

For all of the foregoing reasons, it is recommended that the FedEx Defendants' Motion to Dismiss be GRANTED IN PART AND DENIED IN PART.

      B.    <u>Recommendation to Grant in Part and Deny in Part Motions to Strike</u>

The FedEx Defendants move the Court to strike certain paragraphs of the Amended Complaint and to "admonish[] Plaintiff to comply with the Court's standards for civility in professional conduct." (ECF No. 20, at 1.) After Drake filed several additional documents on the docket (*see* ECF Nos. 22, 23, and 24), the FedEx Defendants filed a Supplemental Motion to Strike certain portions of those filings as well (ECF No. 31). Drake did not respond to the initial motion to strike but filed a response in opposition to the supplemental motion, which he characterized as "consist[ing] of its legal staff whining about nothing." (ECF No. 35, at 2.)

The FedEx Defendants seek to strike passages of the Amended Complaint that fall into several categories: personal attacks on FedEx counsel Barak Babcock and Smith; the background, history, and Plaintiff's thoughts and opinions of racism in America, including Confederate monuments, the Ku Klux Klan and lynching, the Holocaust, the murder of George Floyd, and systemic racism; allegations regarding the Northern District of Texas Judges and court personnel and proceedings in Texas; the request to conduct discovery; Drake's closing remarks; legal argument and citations; and exhibits D–G and I–K. (ECF No. 20, at 5.) In their Supplemental Motion to Strike, the FedEx Defendants "renew and stress their request that the Court issue an order admonishing such conduct and requiring Mr. Drake to comply with the Court's rules under the threat of future sanctions," based on statements Drake made in his post-Amended Complaint filings. (ECF No. 31, at 2.)

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The word 'scandalous' in Rule 12(f) 'generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from

the dignity of the court.'" *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (quoting *Pigford v. Veneman*, 215 F.R.D. 2, 4 (D.D.C. 2003)).  "[T]rial courts make use of their inherent power to control their dockets . . . when determining whether to strike documents or portions of documents [other than pleadings]."  *Tiger Lily LLC v. U.S. Dep't of Hous. & Urb. Dev.*, No. 2:20-cv-2692-MSN-atc, 2020 WL 7682546, at *2 (W.D. Tenn. Oct. 26, 2020) (quoting *Zep Inc. v. Midwest Motor Supply Co.*, 726 F. Supp. 2d 818, 822 (S.D. Ohio 2010)).  "The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with them early in the case.'"  *Operating Eng'rs Loc. 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)).  "[M]otion[s] to strike should be granted only when the pleading to be stricken has no possible relation to the controversy."  *Hill v. Accordia Life & Annuity Co.*, No. 21-CV-2241, 2021 WL 5435250, at *2 (W.D. Tenn. Nov. 19, 2021) (quoting *Mapp v. Bd. of Ed. of the City of Chattanooga, Tenn.*, 319 F.2d 571, 576 (6th Cir. 1963)).

As the FedEx Defendants acknowledge, Rule 12(f) "[m]otions to strike are viewed with disfavor and are not frequently granted."  *Operating Eng'rs*, 783 F.3d at 1050 (6th Cir. 2015) (citing *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953); *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)).  They argue that in this case, however, striking is warranted because "the disfavored character of Rule 12(f) is relaxed somewhat in the context of immaterial and scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the subject of the allegations."  (ECF No. 20, at 2 (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 714 (2d ed. 1990).)  The FedEx Defendants assert that the

"immaterial and scandalous matter" has "no possible relation to the subject matter of the complaint" and is "prejudicial to Defendants" and that "Mr. Drake is using this Court's process as a shield for what would otherwise be libelous and defamatory conduct." (*Id.* at 3.) The FedEx Defendants also assert that Drake's filings run afoul of the Guidelines for Professional Courtesy and Conduct adopted as part of the Local Rules of this Court, which, among other things, require

> treating the opponent, the opposing party, the court and the members of the court staff with courtesy and civility, conducting business in a professional manner at all times; not abusing or indulging in offensive conduct towards the opposite party; treating adverse parties with fairness and due consideration; and showing respect for the legal system by, inter alia, avoiding denigrating the legal profession, the court system, or adversary counsel.

(*Id.* at 3–4 (citing Local Rules, App'x C, Guidelines for Professional Courtesy and Conduct) (internal quotations omitted).)

Although the bar is high for striking materials under Rule 12(f), certain materials in the Amended Complaint surpass that bar. Drake has littered his filings with broadsides against Defendants, Defendants' attorneys, and Texas judges, as well as legal conclusions that do not add anything relevant to the Amended Complaint. *See Allstate Ins. Co. v. OMIC, LLC*, No. 17-13908, 2018 WL 8806551, at *7 (E.D. Mich. Sept. 24, 2018) (striking legal conclusions). The Court thus recommends striking the following paragraphs from the Amended Complaint that contain such material: 52–57, 154, 227,[13] and 228–242.[14]

---

[13] Drake's Amended Complaint contains two paragraphs numbered "227." The recommendation is to strike the second one, on page 91 of his Amended Complaint.
[14] The Court recommends striking the identified allegations regarding the judicial defendants for the additional reason that dismissal of all claims against those defendants is also recommended, as discussed below.

Drake is further reminded that he is bound by the Federal Rules of Civil Procedure and this Court's Local Rules, including those pertaining to courtesy, civility, and professionalism. *See Williams v. Davis*, No. 2:21-cv-02113-JTF-atc, 2022 WL 2819141, at *3 (W.D. Tenn. July 19, 2022) ("The Court's website expressly notifies all pro se litigants: 'The fact that you have chosen self-representation does not excuse you from complying with . . . this district's Local Rules.") (citing https://www.tnwd.uscourts.gov/pdf/content/ProSeGuide.pdf).  Drake must abide by those mandates in engaging with the FedEx Defendants' counsel, both in his filings and in his communications.  "The only special consideration to which a pro se litigant is entitled is to have his pleadings construed liberally by the court," *Gueye v. U.C. Health*, No. 1:13-CV-673, 2014 WL 4984173, at *5 (S.D. Ohio Oct. 6, 2014) (citing *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), an approach meant to serve as "'a shield against the technical requirements of a past age[, ] not a sword with which to insult' the participants in a federal lawsuit." *Kettering v. Larimer Cnty. Det. Ctr.*, 2008 WL 718479, at *1 (D. Colo. Mar. 7, 2008) (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005)); *see also Gueye*, 2014 WL 4984173, at *5 ("A pro se litigant is not excused from the requirement to show appropriate courtesy and respect to opposing counsel.  A pro se litigant is not entitled to make unfounded ad hominem attacks on opposing counsel.  A pro se litigant is not entitled to abuse the court system and its judicial officers, bombard the court with frivolous pleadings, and harass his opponent.") (internal citations omitted).  Drake is warned that if he fails to conduct himself with the civility and professionalism worthy of this Court, both in his filings and in his communications with opposing counsel, the Court will recommend he be sanctioned.

C.    Recommendation to Deny Motion for Sanctions

In his Motion for Rule 11 Sanctions, Drake asserts that sanctions are warranted against the FedEx Defendants and Babcock, their attorney, for "filing a false and misleading declaration, and causing to file a misleading declaration of others." (ECF No. 22-1, at 1.) More specifically, Drake asserts that the declarations attached to the FedEx Defendants' original motion to dismiss by Babcock (ECF No. 11-3) and Hilary Davis, a FedEx Ground Business Solutions Manager (ECF No. 11-2), contained false statements intended to aid Babcock in "be[ing] successful" in this action, "to cause the Court to dislike the Plaintiff," to harass the Plaintiff, and to cause the case to be dismissed. (ECF No. 22-1, at 2–3.) As sanctions, Drake requests that the Court order "[t]he removal of all of FedEx's counsel from the above cause of action," that FedEx "employ outside counsel, where Mr. Babcock will not be listed as counsel in any manner, which includes any appellate litigation," and that the Court "[o]rder the depositions of Barak J. Babcock, Hilary Davis, Cole Brewster" along with ordering "FedEx to locate Brewster and provide his last known address, if married his wife's address, telephone number, place of employment and close relatives addresses and telephone numbers." (*Id.* at 7.)

The FedEx Defendants counter that the motion should be denied for several reasons. First, they assert that their filing of a motion to dismiss Drake's Amended Complaint renders the previously filed motion to dismiss—and all of its attachments, including Babcock and Davis' declarations—a nullity. (ECF No. 30, at 2.) They also assert that the motion should be denied on its substance, as "Drake's allegations of perjury and fraud are unfounded, hollow, and baseless and should be quickly disregarded by the Court and his motion denied." (*Id.*)

Federal Rule of Civil Procedure 11(b) outlines rules related to the representations attorneys make to the court, and Rule 11(c) outlines the potential sanctions that come with violating those rules.  Rule 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(c)(4) provides:

> A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

"In the Sixth Circuit, the test for the imposition of Rule 11 sanctions . . . [is] whether the individual's conduct was objectively reasonable under the circumstances." *Ellipsis, Inc. v. Color Works, Inc.*, No. 03-2939BV, 2005 WL 3466566, at *5 (W.D. Tenn. Dec. 16, 2005) (citing *Union Planters Bank v. L & J Dev. Co., Inc.*, 115 F.3d 378, 384 (6th Cir. 1997); *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 250–51 (6th Cir. 1988); *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir. 1990)).  Determining objective reasonableness requires the court to ask "whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts." *Advo Sys., Inc. v. Walters*, 110 F.R.D. 426, 430 (E.D. Mich. 1986).  "The

Sixth Circuit has stated that what constitutes a reasonable inquiry depends upon factors such as the time available to the signor for investigation, whether the signor had to rely on a client for facts underlying the pleading, whether the pleading was based on a plausible view of the law, and whether the signor depended on forwarding counsel or another member of the bar." *Ellipsis*, 2005 WL 3466566, at *6 (citing *Century*, 837 F.2d at 250–51; Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).

Here, Babcock's actions that form the basis of Drake's motion were objectively reasonable. Drake asserts that parts of Babcock's declaration are incomplete and parts of both his and Davis's declarations are untrue. However, as the FedEx Defendants assert, what Drake's motion demonstrates "is a fact dispute in regard to the substance of communications and conversations between himself and Mr. Babcock and/or employees of FedEx Ground." (ECF No. 30, at 3.) Drake provides his own declaration (ECF No. 22-2), but that document offers no evidence to support his contention that the FedEx Defendants' declarations "were filed for an improper purpose, to harass the Plaintiff, delay the above cause, and to ultimately have Plaintiffs lawsuit dismissed." (ECF No. 22-1, at 6.) Other than a recitation of his version of events, Drake does not offer any evidence that the facts in Davis's declaration are untrue, and he offers no evidence to suggest that Babcock did not conduct a reasonable inquiry into those facts. Given that lack of evidence, and given that the Court finds Babcock's actions objectively reasonable under the circumstances, it is recommended that Drake's motion for sanctions be denied in its entirety.

D.    Recommendation to Dismiss the Judicial Defendants

Drake's claims against the judicial defendants are wholly without merit and should be dismissed. "Generally, a district court may not *sua sponte* dismiss a complaint where the filing

fee has been paid unless the court gives the plaintiff the opportunity to amend the complaint."

*Burnham v. Friedland*, No. 21-3888, 2022 WL 3046966, at *1 (6th Cir. Aug. 2, 2022) (quoting

*Apple*, 183 F.3d at 479).  As noted above, however, Rule 12(b)(1) permits courts to dismiss a

complaint that is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no

longer open to discussion."  *Apple*, 183 F.3d at 479.  "A complaint is 'frivolous' if it lacks an

arguable basis in law or fact."  *Willis v. Shumate*, No. 3:20CV-399-CRS, 2020 WL 4323290, at

*2 (W.D. Ky. July 27, 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  "Statutes

allowing a complaint to be dismissed as frivolous give 'judges not only the authority to dismiss a

claim based on an indisputably meritless legal theory, but also the unusual power to pierce the

veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S.

at 327).  "Unlike a dismissal for failure to state a claim, where a judge must accept all factual

allegations as true, a judge does not have to accept 'fantastic or delusional' factual allegations as

true."  *Id.* at 471 (quoting *Neitzke*, 490 U.S. at 327–28; citing *Iqbal*, 556 U.S. at 678–79).

  The claims against the judicial defendants are frivolous and wholly without merit due to

the doctrine of judicial immunity.  "Judges have absolute immunity from suits based on their

judicial acts, except in matters over which they clearly lack jurisdiction."  *McNeil v. Cmty. Prob.*

*Servs., LLC*, 945 F.3d 991, 996 (6th Cir. 2019) (citing *Mireles v. Waco*, 502 U.S. 9, 9, 11–12

(1991)).  "Although declaratory relief is sometimes available against judges, . . . there is usually

no case or controversy between judges acting as adjudicators and litigants displeased with

litigation outcomes."  *Id.* (citing *In re Justices of Supreme Court of P.R.*, 695 F.2d 17, 21–24 (1st

Cir. 1982); *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197–200 (3d Cir. 2000)).

Courts "err on the side of granting immunity in close cases." *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019) (citing *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Drake's Amended Complaint includes the following listing and description of the allegations regarding the judicial defendants:

> Defendant Judges Barbara Golden Lynn, Michael Paige Lynn, Sam Allen Lindsay, David C. Godbey, James Edgar Kinkeade, Jane Ellen Jackson Boyle, Reed O'Connor, Karen Gren Scholer, Matthew J. Kacsmaryk, Mark Timothy Pittman, James Wesley Hendrix, Brantley Starr, Ada Brown, Maricela Moore, A. Joe Fish, Sidney A. Fitzwater, Sam R. Cummings, John H. McBryde, Terry R. Means, Irma Carrillo Ramirez, Jeffrey L. Cureton, ton, Renee Harris Toliver, David L. Horan, Hal R. Ray, Jr., D. Gordon Bryant, Jr., Lee Ann Reno, Charles Ramsay, Rebecca Rutherford, John R. Parker, James David Folsom, Caroline Craven, Robert Schroeder III, Tonya Parker . . . . The federal judges named herein are an indispensible part of this lawsuit. The Northern District of Texas has systematically dismissed every case that has been transferred to the court without a hearing. It's called systemic racism in America's courts. The gist of the dismissals is an alleged sanction order that was issued improperly and the Plaintiff can prove this fact. Yet, the Texas courts refuse to grant any hearings on the matter, and have continued to violate Plaintiff's Constitutional rights. If this Court conducted an evidentiary hearing on the matter, Plaintiff is more than capable of proving that the sanction order is frivolous, conspired, fraudulent, and should be set aside. These judges have used their judicial powers to violate the U.S. Constitution and the Plaintiff's rights as a U.S. citizen in the past and thus Plaintiff had no choice but to name these Texas federal judges as defendants. Plaintiff is diverse to all of the federal judges sued herein that reside in Texas in various counties. Plaintiff has pled diversity of citizenship jurisdiction.

(ECF No. 16, at 7–8.)[15] The Amended Complaint is generally unclear as to what specific role most of the named judges played in the alleged deprivation of his rights. He asserts, generally, that "many judges break laws" and the Northern District of Texas judges "might as well have their Klan hoods on when they sit on the bench." (*Id.* at 64.) He asserts that the judges "are violating the Plaintiff's First Amendment Rights to petition" (*id.* at 23) and appears to assert that

---

[15] Although Drake named several judges from this district in his original complaint, including District Judges Jon Phipps McCalla, Thomas L. Parker and Mark S. Norris, and Chief Magistrate Judge Tu L. Pham, his Amended Complaint contains no mention of them and removes them as defendants.

they have violated his rights under 42 U.S.C. §§ 1981 and 1983, his Due Process rights, and his

Equal Protection rights by using their judicial authority in, among other things, "deny[ing him]

rights to file his petitions by using a fraudulent prefiling order" (*id.* at 74). He asserts that they

"failed to uphold their duties as judges, which resulted in their underhanded, unethical, and

conspirator actions against the Plaintiff, by taking advantage of him, and did rob and deprive him

of his rights as a U.S. citizen, as set forth herein on account of the Plaintiffs race, African

American." (*Id.* at 79.) Drake's subsequent filings shed additional light on the actions some of

the specific judicial defendants are alleged to have taken. (*See, e.g.*, Plaintiff's Motion for Leave

to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive Motion and

Request Evidentiary Hearing, ECF Nos. 15, 15-1.)

Drake "is not seeking monetary damages against any of the named Defendant judges."

(ECF No. 16, at 63.) Instead, he "is requesting injunctive relief—if FedEx defense files a motion

to transfer, because the events in this litigation partly occurred in the Northern District of Texas

and partly in the Western District of Tennessee." (*Id.*) He claims that, "[i]f the Court transferred

this case to the Northern District of Texas, that court will instantly dismiss the Plaintiff's petition

citing a prefiling order that was the product of fraud, improper procedure, and conspiracy." (*Id.*)

That claim appears to be derived from an order from that court that prohibits Drake from

proceeding *in forma pauperis* without first obtaining leave. *See Drake v. Nordstrom Dep't

Stores*, No. 3:18-CV-471-D-BN, 2018 WL 1399179 (N.D. Tex. Mar. 1, 2018), *report and

recommendation adopted*, 2018 WL 1404320 (N.D. Tex. Mar. 19, 2018). The court noted

Drake's history as a vexatious litigant and explained that it was honoring an Eastern District of

Texas decision from 2012 that included a similar sanction against him. *Id.* at *2 (citing *Drake v.

*Travelers Indem. Co.*, No. 2:11-cv-00318-MHS-CMC, Dkt. No. 11, at 6 (E.D. Tex. Mar. 16, 2012)).[16]

Those filing limitations form the core of Drake's claims against the judicial defendants. Other courts have previously held that similar claims Drake has made against judges were barred by judicial immunity. *See Drake v. Travelers Com. Ins. Co.*, No. CV 20-11551, 2020 WL 12630645, at *2 (E.D. Mich. July 22, 2020), *reconsideration denied*, No. CV 20-11551, 2020 WL 7260526 (E.D. Mich. Dec. 10, 2020) (finding that, as in another case Drake filed in Maryland, his "claims against judges in Texas are barred by judicial immunity," therefore warranting dismissal with prejudice) (citing *Drake v. Travelers Indemnity Co.*, 19-cv-2669, 19 WL 5423099, at *6 (D. Md. Oct. 22, 2019)).  This Court concludes the same.

Drake acknowledges that judges are afforded judicial immunity but asserts that the doctrine is inapplicable to the judicial defendants' alleged act here based on case law distinguishing judicial acts, which are protected by absolute immunity, and administrative acts, which are not.  (ECF No. 16, at 62 (citing, e.g., *Morrison v. Lipscomb*, 877 F.2d 463 (6th Cir. 1989)).)  However, the alleged act at issue—entering an order limiting Drake's *in forma pauperis* filing ability—was a judicial act protected by absolute immunity.  *See Doose v. Federal Court*, 1 F.3d 1246, 1246 (9th Cir. 1993) (citing 28 U.S.C. § 1915(a) ("The grant or denial of permission

---

[16] Texas's district courts are not the only ones that have placed filing limitations on Drake.  In *Drake v. Travelers Com. Ins. Co.*, No. 4:20-CV-99, 2020 WL 12675292, at *1–2 (S.D. Ga. May 8, 2020), the court issued a show cause order for Drake to demonstrate why he should not face filing restrictions in that district after noting that Drake has filed "dozens of cases . . . in recent years in various judicial districts" and that he "seems to be seeking to conceal the extent of his litigation by signing his pleadings with variations of his name."  The court further explained that "[t]o say that plaintiff has a habit of abusing the judicial system would be an understatement." *Id.* at *2.  The district court subsequently adopted the report and recommendation that severely restricted Drake's pending and future filings in the Southern District of Georgia.  *See Drake v. Travelers Com. Ins. Co.*, No. 4:20-CV-99, 2020 WL 3453853 (S.D. Ga. June 24, 2020).

to proceed in forma pauperis is a judicial act within the jurisdiction of the district court.").

Moreover, it is axiomatic that "[c]ourts of justice are universally acknowledged to be vested, by

their very creation, with power to impose silence, respect, and decorum, in their presence, and

submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)

(quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). "A district court has inherent authority

to control vexatious litigants." *Sifuentes v. Prelesnik*, No. 21-1201, 2021 WL 4128961, at *3

(6th Cir. July 12, 2021), *cert. denied*, 142 S. Ct. 409 (2021). So, district courts do not abuse their

discretion by imposing prefiling restrictions on parties who have a history of repetitive and

vexatious litigation. *Constant v. DTE Elec. Co.*, No. 20-1514, 2021 WL 4100008, at *2–3 (6th

Cir. Apr. 29, 2021), *cert. denied*, 142 S. Ct. 462 (2021), *reh'g denied*, 142 S. Ct. 850 (2022)

(citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269–70 (6th Cir. 1998); *Ortman v.

Thomas*, 99 F.3d 807, 811 (6th Cir. 1996)). In *Feathers*, the court determined that a

"conventional prefiling review requirement" that resembled the one multiple Texas courts have

applied to Drake was "quite judicious" to prevent the potential filing of repetitive and vexatious

litigation. 141 F.3d at 269–270. The court in *Ortman* concluded that it would be improper for a

person to "be absolutely foreclosed from initiating an action in a court of the United States,

though it is permissible to require one who has abused the legal process to make a showing that a

tendered lawsuit is not frivolous or vexatious before permitting it to be filed." 99 F.3d 807,

811.[17]

---

[17] Drake also asserts a *Bivens* claim against the judicial defendants based on the *in forma
pauperis* order. However, judges enjoy absolute immunity for judicial acts in *Bivens* suits as
well, whether the damages sought are monetary or injunctive. *Olita v. McCalla*, No. 2:21-CV-
2763, 2022 WL 1644627, at *7 (W.D. Tenn. May 24, 2022) (quoting *Irvin v. Campbell*, No.
3:14-cv-0360, 2014 WL 576332, at *2 (M.D. Tenn. Feb. 12, 2014)).

The absolute immunity from suit afforded to judges is applicable in this case, as Drake

has not plausibly alleged that any of the acts of the judicial defendants were merely

administrative or were clearly beyond their jurisdiction. *See McNeil*, 945 F.3d at 996. The Court

thus finds that Drake's claims against each judicial defendant are "totally implausible,

attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion," *Apple*, 183

F.3d at 479, and recommends that the judicial defendants be dismissed from this action under

12(b)(1).

### ORDER

The Court also makes the following rulings: the FedEx Defendants' Motion to Dismiss

for Lack of Jurisdiction (ECF No. 11) and the Motion to Review Submitted Pleadings (ECF No.

38) are DENIED AS MOOT. Drake's Motion for Leave to Offer Evidence and Proof (ECF No.

14) and the Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on

Dispositive Motion and Request Evidentiary Hearing (ECF No. 15) are DENIED. Drake's

Motion to Extend Time for Service (ECF No. 12) is GRANTED as to the non-judicial

Defendants.

**I.     Order Denying as Moot Original Motion to Dismiss for Lack of Jurisdiction and
        Motion to Review Submitted Pleadings**

After the FedEx Defendants filed their original motion to dismiss on November 1, 2021

(ECF No. 11), Drake filed his Amended Complaint on November 22, 2021 (ECF No. 16).

Federal Rule of Civil Procedure 15(a)(1)(B) permits a party to "amend its pleading once as a

matter of course . . . 21 days after service of a responsive pleading or 21 days after service of a

motion under Rule 12(b), (e), or (f)." Drake timely filed his Amended Complaint consistent with

Rule 15. The Amended Complaint superseded the original complaint and became the operative

pleading in this matter, rendering moot Defendants' previously filed motion to dismiss the

original complaint (ECF No. 11). *See Camillo v. Campbell Clinic, P.C.*, No. 2:19-cv-02876-SHM-atc, 2021 WL 799873, at *5 (W.D. Tenn. Mar. 2, 2021), *reconsideration denied*, 2021 WL 1233516 (W.D. Tenn. Apr. 1, 2021) (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)) ("When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward."); *Alsbrook v. Recontrust Co.*, No. 2:13-cv-02067-JPM-cgc, 2013 WL 1820049 (W.D. Tenn. Apr. 30, 2013) (denying as moot a motion to dismiss upon the filing of an amended complaint). The FedEx Defendants' original motion to dismiss is therefore DENIED AS MOOT.

Drake's Expedited Motion for Plaintiff's Additional Motions and Responses to Defendant FedEx Motions be Submitted to the Court for Review (ECF No. 38) is also DENIED AS MOOT, as the relief he seeks in that motion is effectively granted through the entry of this Order.

## II.    Order Denying Motion to Take Depositions and Motion to Provide Evidence

In his Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive Motion and Request Evidentiary Hearing (ECF No. 15), Drake asserts that, by being allowed to depose FedEx employees and their counsel, as well as several judges, court employees, and officials from Texas, he will be able to demonstrate that multiple people have committed perjury, including Babcock and Davis, through assertions they made in declarations attached to the FedEx Defendants' original Motion to Dismiss. Drake also asserts that, "[s]ince FedEx counsel has brought up the lawsuit the Plaintiff filed against Joe Biden, the Plaintiff requests the ability to submit to President Biden less than 20 written questions to be answered under oath, once the Plaintiff has deposed Barak Babcock." (ECF No. 15-1, at 1.) In their response to the motion, the FedEx Defendants assert "Drake can defend against Defendants'

motion without testimony from the President of the United States and judges serving the State of Texas." (ECF No. 21, at 3.) The FedEx Defendants are correct that Drake has not "identif[ied] any relevant information that he needs to demonstrate the sufficiency of the Amended Petition, a dispositive legal question." (*Id.*) Any such factual development would not alter the conclusions the Court has arrived at herein. Drake's motion is therefore DENIED.

The same is true as to Drake's Motion for Leave to Offer Evidence and Proof. (ECF No. 14.) There, Drake seeks to enter a CD into the record that includes a video of his altercation with Brewster. Consideration of the video is unnecessary for the Court to make the determinations set out in this Order. To the extent Drake seeks to enter the CD into evidence later, he may move to do so at the appropriate time. That motion is DENIED.

III. **Order Granting in Part Motion for Extension of Time to Serve Remaining Defendants**

To the extent Drake seeks additional time to effect service (ECF No. 12),[18] the motion is GRANTED as to the non-judicial defendants listed in his Amended Complaint, i.e., Scot Graydon, Warren Lloyd Vavra, and Unnamed Clerk in Travis County (ECF No. 16, at 8). Though Drake's Amended Complaint is not a model of clarity as to what actions those Defendants might have taken, which counts in his Amended Complaint may apply to them, or whether this Court has personal jurisdiction over them, Federal Rule of Civil Procedure 4(m) commends permitting them to be served. Under Rule 4(m),

> [i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

---

[18] Subsequent to his filing of the motion, and before the FedEx Defendants responded to it, the FedEx Defendants acknowledge that they "were served through their registered agent for service of process on November 29, 2021." (ECF No. 21, at 1.)

Drake indicates he needs additional time to serve these defendants because he is recovering from an upper respiratory infection, demonstrating good cause for a brief extension. As such, Drake shall serve Scot Graydon, Warren Lloyd Vavra, and Unnamed Clerk in Travis County within 30 days of the entry of this Order.[19]  Failure to do so may result in dismissal of all claims against those individuals.

## CONCLUSION

As described above, the Court provides the following recommendations:

1.      That the Motion to Dismiss Drake's Amended Complaint (ECF No. 19) be GRANTED IN PART AND DENIED IN PART.

2.      That the Motion to Strike (ECF No. 20) and the Supplemental Motion to Strike (ECF No. 31) be GRANTED IN PART AND DENIED IN PART.

3.      That the Motion for Sanctions (ECF No. 22) be DENIED.

4.      That all claims against the judicial defendants be DISMISSED.

The Court also orders the following:

1.      The Motion to Dismiss (ECF No. 11) is DENIED AS MOOT.

2.      The Motion to Review Submitted Pleadings (ECF No. 38) is DENIED AS MOOT.

3.      The Motion for Leave to Take Depositions In-Person and or by Zoom, Prior to Ruling on Dispositive Motion and Request Evidentiary Hearing (ECF No. 15) is DENIED.

4.      The Motion for Leave to Offer Evidence and Proof (ECF No. 14) is DENIED.

---

[19] Because the Court recommends dismissal of all claims against the judicial defendants, as discussed above, the motion for an extension of time to serve those defendants is DENIED without prejudice.  Should the Court's recommendation as to the judicial defendants not be adopted, Drake may renew his motion to extend the time for service of the judicial defendants.

5.      The Motion to Extend Time to Serve Defendants (ECF No. 12) is GRANTED only as to Defendants Scot Graydon, Warren Lloyd Vavra, and Unnamed Clerk in Travis County.  Drake shall serve them with the Amended Complaint within thirty days of the entry of this Order.

RESPECTFULLY SUBMITTED this 23rd day of August, 2022.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.